IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FABIA SCALI-WARNER                :

   v.                             :     Civil Action No. DKC 18-1984

N&TS GROUP CORPORATION, et al.    :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment case are (1) the motion to dismiss amended complaint (ECF No. 16) filed by Defendants N&TS Group Corporation ("N&TS"), Claudio Novebaci, Stefania Federici, and Valerio Masenzani ("Defendants"), (2) the motion for leave to file second amended complaint (ECF No. 19) filed by Plaintiff Fabia Scali-Warner ("Plaintiff"), and (3) the motion to dismiss second amended complaint (ECF No. 20) filed by Defendants.  The issues have been fully briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion for leave to file second amended complaint will be denied, the motion to dismiss second amended complaint will be denied as moot, and the motion to dismiss amended complaint will be granted.  Plaintiff will be granted 21 days within which to file a proposed third amended complaint, properly delineating her claims and articulating sufficient facts to establish liability for the individual defendants.

## I. Background

### A. Factual Background[1]

"N&TS is a company that provides electronic payment processing services technology to corporations." (ECF. No. 19-1, at 1). Plaintiff was employed as a "Client Liaison and represented N&TS throughout the United States." (*Id.*). Pursuant to a "written contract," Plaintiff was paid $250.00 per-day "for eight hours' work for market developing[.]" (*Id.*, at 3). In addition, Plaintiff translated documents for N&TS at the rate of $0.11 per-word, "a standard rate in the industry." (*Id.*). "Plaintiff left her work with N&TS in December 2017." (*Id.*, at 2). "On or around December 15, 2017, Plaintiff sent an invoice for translation to Defendant N&TS in the amount of $10,885.71." (*Id.*, at 4). Plaintiff alleges that N&TS "failed to respond" and did not "pay for the translating work." (*Id.*, at 3-4). Plaintiff contends that Defendants did not pay her minimum wage or overtime.

### B. Procedural Background

Plaintiff commenced this action in the Circuit Court for Baltimore County on April 10, 2018. Defendants filed a notice of removal in this court on June 28, 2018. (ECF No. 1). All four Defendants filed individual motions to dismiss on July 6, 2018.

---

[1] Unless otherwise noted, the facts outlined here are set forth in the proposed second amended complaint and construed in the light most favorable to Plaintiff.

(ECF Nos. 3-7). On July 20, 2018, Plaintiff filed an opposition in response to the motions to dismiss and an amended complaint. (ECF Nos. 11 & 12). On August 13, 2018, a paperless order was issued denying Defendants' individual motions to dismiss as moot. (ECF No. 17). Defendants filed a motion to dismiss the amended complaint on August 10, 2018. (ECF No. 16). Plaintiff responded on August 24, 2018 (ECF No. 17) and also filed a motion for leave to file second amended complaint (ECF No. 19). Defendants filed a motion to dismiss Plaintiff's second amended complaint on September 7, 2018. (ECF No. 20). Plaintiff responded on September 21, 2018. (ECF No. 21).

Plaintiff asserts the following claims against all Defendants: (1) violation of the Maryland Wage Payment and Collection Law ("MWPCL") (count I); (2) failure to pay minimum wage and overtime in violation of the Fair Labor Standards Act ("FLSA") (count II); and (3) failure to pay overtime in violation of the Maryland Wage and Hour Law ("MWHL") (count IV). (*Id.*, at 5-8). Plaintiff also asserts a breach of contract claim against Defendant N&TS (count III). (*Id.*, at 6).

For the reasons that follow, leave to file the second amended complaint will be denied, thus mooting the motion to dismiss the second amended complaint. The first amended complaint, which is even less detailed, also fails to state a claim and will be

dismissed. Plaintiff will be granted one final opportunity to file a third amended complaint.

## II. Analysis

### A. Second Amended Complaint

After the right to amend as a matter of course expires, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed.R.Civ.P. 15(a)(2). Rule 15(a)(2) provides that courts should "freely give leave [to amend] when justice so requires," and commits the matter to the discretion of the district court. *See Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011). Refusal of such leave, without a justifying reason, is not only an abuse of discretion, but is "inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Denial of leave to amend should occur only "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (emphasis omitted) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). Determinations of futility under Rule 15(a) are governed by the standard for motions to dismiss. *Classen Immunotherapies, Inc. v. King Pharms., Inc.*, 403 F.Supp.2d 451, 459 (D.Md. 2005).

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Although Defendants have not been prejudiced given the early stage at which Plaintiff sought leave to amend her complaint to include claims of unpaid overtime, leave to amend will be denied

5

because both the proposed second amended complaint and the amended complaint fail to state a claim.

Defendants contend that Plaintiff's claims under the FLSA fail because the "threadbare allegations asserted fail to meet the requisite pleading standards . . . [and] [u]pon dismissal of the lone Federal claim (*i.e.*, FLSA), the Court should decline to exercise supplemental jurisdiction over the remaining State law claims[.]"  (ECF No. 20-1, at 2).  Plaintiff does not directly address the pleading requirement in her opposition.  Plaintiff's entire claim under the FLSA for minimum wage and overtime is restated here:

> Defendants violated the Fair Labor Standards Act by failing to pay minimum wage, because Defendants did not pay Plaintiff for her translation work occurring on numerous days, and violated the Act by requiring that Plaintiff work overtime of more than eight hours a day and weekends without paying overtime. Plaintiff worked overtime on the following weekends and holidays: April 25 and 26, 2015; October 12, 2015; October 24 and 25, 2015; November 14 and 15, 2015; January 30, 2016; April 16, 2[0]16; April 30, 2016; May 7 and 8, 2016; July 3, 2016; August 20, 2016; October 22 and 23, 2016. Plaintiff also worked over forty hours a week during the weeks of February 13, 2017, March 6, 2017, and April 3, 2017.

(ECF No. 19-1, at 5).[2]

---

[2] Plaintiff asserts the same dates to support both her FLSA and MWHL claims.

"The purpose of the FLSA is 'to protect all covered workers from substandard wages and oppressive working hours.'" *Shaliehsabou v. Hebrew Home of Greater Washington, Inc.*, 363 F.3d 299, 304 (4th Cir. 2004). Section 206 states that "[e]very employer shall pay to each of his employees" wages of at least $7.25 per hour. 29 U.S.C § 206(a)(1). Section 207 requires employers to compensate their employees "at a rate not less than one and one-half times the regular rate" for any hours worked in excess of forty per week. 29 U.S.C. § 207(a)(1). "To state a prima facie case under the FLSA, plaintiff must show 'as a matter of just and reasonable inference that the wages paid to him did not satisfy the requirements of the FLSA.'" *Avery v. Chariots For Hire*, 748 F.Supp.2d 492, 496 (D.Md. Sept. 16, 2010) (quoting *Caro–Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1513 (11th Cir. 1993)). The requirements of the MWHL mirror those of the FLSA. *See* MD. CODE ANN., LAB. & EMPL. § 3-401 et. seq. "Thus, [p]laintiff['s] claim under the MWHL 'stands or falls on the success of [his] claim[s] under the FLSA.'" *Brown v. White's Ferry, Inc.*, 280 F.R.D. 238, 242 (D.Md. 2012) (quoting *Turner v. Human Genome Sci., Inc.*, 292 F.Supp.2d 738, 744 (D.Md. 2003)).

Plaintiff does not clearly state the weeks during which she worked over forty hours per week and for which she was not compensated, approximately how many hours she worked over forty

each week, and the amount she was compensated each week when Defendants allegedly owed her overtime.  Neither does Plaintiff provide clarity as to whether she worked on translation and marketing on the same or different days, which is important to her case given the disparity in pay structures.  *See*, *e.g.*, *Avery*, 748 F.Supp.2d at 502 (dismissing claim for wages for pre-trip cleaning inspections where plaintiffs have not alleged that they were not paid the statutory minimum wage for each of the total number of hours they worked).  Neither Plaintiff's first nor second amended complaint contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for" minimum wage or overtime violations.  *Iqbal*, 556 U.S. at 678.  Thus, the amended complaint will be dismissed and Plaintiff's motion for leave to file second amended complaint will be denied as futile.

In Plaintiff's motion for leave to file second amended complaint and in the opposition to Defendants' motion to dismiss, however, Plaintiff indicates that she has more information that may bolster the complaint to state a claim for relief.  *See*, *e.g.*, ECF No. 19, at 1 ("Defendants' second motion to dismiss has caused Plaintiff to review her records relating to her work.  She conferred with her counsel on the records and came to understand that she has a claim for unpaid overtime under the FLSA.").  Accordingly, Plaintiff will have twenty-one (21) days to file a

third amended complaint.  In that complaint, she should separate her overtime from her minimum wage claim, indicate specifically which weeks she worked over forty hours in total, approximately how many hours she worked over forty each week, which days she did translation work, and the amount she was compensated each week when Defendant allegedly owed her overtime.  Plaintiff will not, however, be permitted to assert new claims or allege facts outside the scope of the claims she attempted to raise initially.

**B.   FLSA and MWPCL Liability**

The remaining issue to be resolved is individual liability.  Defendants argue that Plaintiff does not "sufficiently allege that Mr. Novebaci, Ms. Federici, or Mr. Masenzani were all Plaintiff's employer under the FLSA or MWPCL."  (ECF No. 16, at 17).  Plaintiff maintains that she "has sufficiently pled that Defendants are employers of Plaintiff."  (ECF No. 4, at 4) (internal capitalization omitted).

The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  As noted by Judge Williams, courts in this district determine whether an individual is an "employer" under this definition by examining "the economic realities of the relationship between the employee and the putative employer." *Caseres v. S & R Mgt. Co., LLC*, No. 12-cv-01358-AW,

9

2012 WL 5250561, at *3 (D.Md. Oct.24, 2012). The economic realities test looks to a number of factors, including whether the putative employer is someone who "(1) has the authority to hire and fire employees; (2) supervises and controls work schedules or employment conditions; (3) determines the rate and method of payment; and (4) maintains employment records." *Khalil v. Subway at Arundel Mills Office Park, Inc.*, No. CCB-09-158, 2011 WL 231793, at *2 (D.Md. Jan.24, 2011); *see also Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983). No single factor is dispositive; rather, the totality of the circumstances must be considered. *See, e.g., Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947) (employer-employee relationship does not depend on "isolated factors but rather upon the circumstances of the whole activity."). Accordingly, an individual defendant's status as a high-level corporate shareholder or officer does not necessarily impart "employer" liability to that individual; the analysis turns on the economic realities of the individual's relationship with the putative employee. *Pearson v. Prof'l 50 States Prot., LLC*, No. RDB-09-3232, 2010 WL 4225533, at *4 (D.Md. Oct.26, 2010).

The MWPCL, in turn, permits an employee to recover treble damages when his or her employer does not pay the employee on a regular basis or promptly upon termination. *Butler v. DirectSat*

*USA, LLC*, 800 F.Supp.2d 662, 667 (D.Md. 2011). The MWPCL defines "employer" to include "any person who employs an individual in the State or a successor of the person." Md.Code Ann., Lab. & Emp., § 3-501(b). This definition is more restrictive than either the FLSA or the MWHL as it does not expand employer liability to those acting on behalf of the employer. *Watkins v. Brown*, 173 F.Supp.2d 409, 416 (D.Md. 2011) (rejecting an interpretation of "employer" that would encompass supervisors, officers, or other agents acting on behalf of a corporate employer). Thus, for purposes of the MWPCL, the term "employer" must be interpreted in accordance with the "'commonly understood meaning of the term . . . , which contemplates some sort of contractual relationship involving the payment of wages in exchange for services.'" *Caseres*, 2012 WL 5250561, at *4 (quoting *Watkins*, 173 F.Supp.2d at 416).

Plaintiff alleges that Mr. Novebaci, Ms. Federici, and Mr. Masenzani were Plaintiff's employers. To support this conclusion, Plaintiff alleges the following as to all three individual Defendants:

- "Defendants Novebaci, Federici, and Masenzani had responsibility for payment of wages to employees, including Plaintiff."

- "Defendants Novebaci, Federici, and Masenzani directed Plaintiff's marketing activities, including directing Plaintiff to travel to events and work with clients."

11

(ECF Nos. 19-1, at 3; 12, at 3). In addition, Plaintiff alleges the following against Mr. Novebaci, Ms. Federici, and Mr. Masenzani individually:

<u>Mr. Novebaci</u>

- "Plaintiff worked closely on matters with Novebaci on NT&S contracts, and he also handled legal matters and worked from N&TS's Miami office."

- "Claudio Novebaci is the manager located in the United States, and handled law and accounting items. For example, Plaintiff's cellphone bill was handled by Novebaci under the N&TS phone plan."

<u>Ms. Federici</u>

- "Stefania Federici is the Chief Financial Officer of N&TS. As the CFO, Federici determines payments to employees and contractors, including whether to pay employees and contractors. Federici made the decision not to pay Plaintiff that amount that is at issue in this action. Federici did not tell Plaintiff directly that Plaintiff was not being paid, but instructed someone from the Human Relations department to contact Plaintiff to give Plaintiff this information."

- "Frederici requested that Plaintiff submit invoices to N&TS Spa although Plaintiff was working for N&TS, solely for purposes of accounting."

<u>Mr. Masenzani</u>

- "Valerio Masenzani is the CEO of N&TS. As the CEO, Masenzani had the power to hire and fire Plaintiff, and in fact did hire Plaintiff. Plaintiff reported to Masenzani."

12

(ECF Nos. 19-1, at 2-3; 12, at 2-3). At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). Plaintiff alleges that all three individual defendants "directed Plaintiff's marketing activities" and "had responsibility for payment of wages" to Plaintiff. These allegations, however, are conclusions lacking factual support. Although the factual allegations concerning Ms. Federici and Mr. Masenzani are more robust than those about Mr. Novebaci (who appears to have been only a manager and not Plaintiff's employer), more is needed to proceed against any of the three. If Plaintiff wishes to proceed against any of the three individuals, she must indicate in the third amended complaint whether and how any individual had the authority to hire and fire Plaintiff, supervised and controlled Plaintiff's work schedule or employment conditions, determined Plaintiff's rate and method of payment, or maintained employment records. Plaintiff will not, however, be permitted to assert new claims or allege facts outside the scope of the claims she attempted to raise initially.

## IV. Conclusion

For the foregoing reasons, the motion for leave to file second amended complaint will be denied, the motion to dismiss the second amended complaint will be denied as moot, and the motion to dismiss the first amended complaint will be granted. Plaintiff will have twenty-one (21) days to file a third amended complaint in accordance with this memorandum opinion. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
