IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FABIA SCALI-WARNER :
:
v. : Civil Action No. DKC 18-1984
:
N&TS GROUP CORPORATION, et al. :
:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment case is the motion to dismiss the third amended complaint filed by Defendants N&TS Group Corporation ("N&TS"), Stefania Federici, and Valerio Masenzani (collectively, "Defendants"). (ECF No. 27). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be denied in part and granted in part.

**I. Background[1]**

**A. Factual Background**

"N&TS is a company that provides electronic payment processing services technology to corporations." (ECF No. 24, ¶ 1). Fabia Scali-Warner ("Plaintiff") "was employed as a Client Liaison and represented N&TS throughout the United

---

[1] Unless otherwise noted, the facts outlined here are set forth in the complaint and construed in the light most favorable to Plaintiff.

States." (*Id.*, ¶ 9). Valerio Masenzani was the Chief Executive Officer ("CEO") of NT&S.[2] Stefania Federici is the Chief Financial Officer ("CFO") of NT&S.

Plaintiff performed marketing and translation work for N&TS. A written contract governed Plaintiff's marketing work, and "Plaintiff had at least two written marketing employment contracts" during her employment from February 2015 to December 2017. (ECF No. 24, ¶¶ 10–20). N&TS required Plaintiff to form a corporation, Viral Storytelling, Inc., to execute the marketing contracts. The "translation work was not part of the written contract." (*Id.*, ¶ 23). "Plaintiff performed the translation work from December 7, 2015 to July 24, 2017." (*Id.*, ¶ 25).

Plaintiff's compensation for the marketing work was "$250.00 per day for eight hours' work[,]" or "$31.25 per hour[.]" (ECF No. 24, ¶ 19). Plaintiff received "$1,250.00 per week for forty hours' work" throughout her employment at N&TS. (*Id.*). "Plaintiff worked overtime for marketing work during certain weeks, but was never paid overtime." (*Id.*, ¶ 22). Plaintiff's compensation for the translation work was "$0.11 per word, a standard rate in the industry." (*Id.*, ¶ 23). Another "industry standard for translation is 2,000 words in eight

---

[2] The parties agree that Mr. Masenzani died on or about April 4, 2019. (ECF No. 27-1, at 1 n.1; ECF No. 30, at 12 n.2).

2

hours' time." (*Id.*). Plaintiff, via Viral Storytelling, Inc., invoiced N&TS $10,885.71 for translation work but never received any payment.

B.  **Procedural Background**

A previous memorandum opinion outlined the procedural background. (ECF No. 22, at 2-3). Therefore, only a brief update is necessary. In that previous memorandum opinion and its accompanying order, the court granted Defendants' motion to dismiss the amended complaint (ECF No. 16); denied Plaintiff's motion for leave to file a second amended complaint (ECF No. 19); and denied as moot Defendants' motion to dismiss the second amended complaint (ECF No. 20). (ECF Nos. 22; 23). The court afforded Plaintiff "twenty-one (21) days to file a third amended complaint." (ECF No. 22, at 8-9).

On April 1, 2019, Plaintiff filed the third amended complaint. (ECF No. 24). Plaintiff asserts four claims: (1) violation of the Maryland Wage Payment and Collection Law ("MWPCL") (Count I); (2) violation of the Fair Labor Standards Act ("FLSA") (Count II); breach of contract (Count III); and violation of the Maryland Wage and Hour Law ("MWHL") (Count IV). Plaintiff asserts Counts I, II, and IV against all Defendants.[3]

---

[3] Previously, Plaintiff included Claudio Novebaci as an individual defendant. (ECF No. 12, at 1). The third amended complaint does not assert any claims against Mr. Novebaci and he will be dismissed.

3

Plaintiff asserts Count III solely against N&TS. On May 10, 2019, Defendants filed the presently pending motion to dismiss the third amended complaint. (ECF No. 27). On June 7, 2019, Plaintiff responded. (ECF No. 30). Defendants did not file a reply.

**II. Standard of Review**

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-

4

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

In reviewing a motion to dismiss, the court may "consider documents attached to the complaint, *see* Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

### III. FLSA and MWHL Claims (Counts II and IV)

"The purpose of the FLSA is 'to protect all covered workers from substandard wages and oppressive working hours.'" *Shaliehsabou v. Hebrew Home of Greater Wash., Inc.*, 363 F.3d 299, 304 (4th Cir. 2004). Section 206 addresses minimum wage and requires employers to pay wages of at least $7.25 per hour. 29 U.S.C. § 206(a)(1). Section 207 addresses maximum hours and requires employers to compensate their employees "at a rate not less than one and one-half times the regular rate" for any hours worked in excess of forty per week. 29 U.S.C. § 207(a)(1). The "regular rate" is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which [she] is employed." 29 C.F.R. § 778.108; *see also* 29 U.S.C. § 207(e).

"To state a *prima facie* case under the FLSA, plaintiff must show 'as a matter of just and reasonable inference that the wages paid to him did not satisfy the requirements of the FLSA.'" *Avery v. Chariots for Hire*, 748 F.Supp.2d 492, 496

5

(D.Md. 2010) (quoting *Caro-Galvan v. Curtis Richardson, Inc.*, 993 F.2d. 1500, 1513 (11th Cir. 1993). The requirements of the MWHL mirror those of the FLSA. *See* Md. Code Ann., Lab. & Empl., § 3-401 *et seq.* Therefore, Plaintiff's "claim under the MWHL 'stands or falls on the success of [her] claim[] under the FLSA." *Brown v. White's Ferry, Inc.*, 280 F.R.D. 238, 242 (D.Md. 2012) (quoting *Turner v. Human Genome Sci., Inc.*, 292 F.Supp.2d 738, 744 (D.Md. 2003).

Plaintiff alleges Defendants failed to pay her minimum wage and overtime. She alleges that Defendants did not pay her minimum wage for her translation work because they did not pay her at all. (ECF No. 24, ¶¶ 27, 35). She alleges that Defendants did not pay her overtime for her marketing work because she worked hours in excess of forty hours per week and did not receive overtime compensation. (*Id.*, ¶¶ 22, 35). Defendant argues that Plaintiff's third amended complaint fails to comply with the court's "specific instructions as to the information that [she] must include[.]" (ECF No. 27-1, at 10). Defendant also criticizes inconsistencies in Plaintiff's exhibits to the complaint, (*id.*, at 12–15), and contends that Plaintiff fails to "allege that Defendants had any knowledge of the alleged overtime hours she worked[,]" (*id.*, at 15-17).

Fatal to Plaintiff's minimum wage claim is her allegation that she received "a total of $1,250.00 per week for forty

6

hours' work" throughout her employment. (ECF No. 24, ¶ 19). Her distinction between payment received for marketing work and payment received for translation work is unavailing.[4] Both her marketing rate and her translating rate were well above minimum wage. She alleges she received "$250.00 per day for eight hours' work[,]" or "$31.25 per hour" for her marketing work. (*Id.*, ¶ 19). She alleges that she should have received "$0.11 per word" for her translating work. (*Id.*, ¶ 23). The "industry standard" of "2,000 words in eight hours' time" computes to $220.00 per day for eight hours' work, or $27.50 per hour.[5] While Plaintiff alleges that she did not receive any payment for her translation work, her allegation that she received $1,250.00 per week, or $31.25 per hour, forecloses her minimum wage claim.

Plaintiff does, however, sufficiently allege her overtime claim. She alleges that she performed marketing work in excess of forty hours per week but only received compensation for forty hours of work. (ECF No. 24, ¶ 19, 22). She also alleges that she performed translation work and never received any compensation at all. (*Id.*, ¶ 27). She attaches a chart to her

---

[4] The distinction suggests that N&TS employed Plaintiff at piece rates "performing two or more kinds of work for which different hourly or piece rates have been established." 29 U.S.C. § 207(g).

[5] Federal minimum wage is $7.25 per hour. 29 U.S.C. § 206(a)(1). Maryland minimum wage is $11.00 per hour. Md. Code Ann., Lab. & Empl., § 3-413.

7

complaint that identifies the weeks that she performed more than 40 hours of marketing work and the amount of hours in excess of 40 hours per week that she worked. (ECF No. 24-4). She also attaches a chart to her complaint detailing the days or time periods that she performed translating work. (ECF No. 24-5). Defendants' challenges to the consistency and reliability of the charts are inappropriate at the motion to dismiss stage. Defendants' knowledge argument is similarly unavailing. The first case Defendants cite in support, *Hawkins v. Proctor Auto Serv. Ctr., LLC*, No. 09-1908-RWT, 2010 WL 1346416 (D.Md. Mar. 30, 2010), concluded:

> To assert a claim for unpaid overtime compensation and liquidated damages under the FLSA, a plaintiff must plead (1) that he worked overtime hours without compensation; and (2) that the employer knew or should have known that he worked overtime but failed to compensate him for it. Plaintiff alleges that he worked more than forty hours a week and that Defendants did not compensate him for the overtime. Plaintiff clearly states a claim that is plausible on its face[.]

*Id.*, at *1 (citations and quotation marks omitted). Plaintiff, like the *Hawkins* plaintiff, sufficiently alleges that she "worked more than forty hours a week and that Defendants did not compensate [her] for the overtime." *Id.* Moreover, while the United States Court of Appeals for the Fourth Circuit requires plaintiffs to prove "actual or constructive knowledge of. . .

8

overtime work as an element of [an overtime] case[,]" Plaintiff has sufficiently done so here. *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986). "Because, as a practical matter, the requirements to state [an overtime compensation claim under the FLSA and MWHL] are quite straightforward, courts have routinely found that plaintiffs satisfy [the] standard merely by alleging that their employers did not provide them with overtime pay even though they worked in excess of forty hours during the workweek." *Calle v. Chul Sun Kang Or*, 2012 WL 163235, at *2 (D.Md. Jan. 18, 2012) (citation and quotation marks omitted); *see also Jones v. Nucletron Corp.*, No. 11-02953-RDB, 2013 WL 663304, at *3 (D.Md. Feb. 20, 2013) (quoting *Calle*).

Defendants also argue that Plaintiff was an independent contractor, rather than an employee, and that therefore Plaintiff's FLSA, MWHL, and MWPCL claims must be dismissed. (ECF No. 27-1, at 3-10). Similarly, Defendants contend that Plaintiff fails to allege that Ms. Federici or Mr. Masenzani were Plaintiff's employer for purposes of individual liability under the FLSA and MWPCL. (ECF No. 27-1, at 19–25). Each argument will be considered in turn.

### A. Employee vs. Independent Contractor

Defendants contend that Plaintiff is an independent contractor and not an employee. (ECF No. 27-1, at 3-10). They emphasize that Plaintiff herself "waivers between admitting she

9

was an independent contractor and attempting to argue she was an employee." (*Id.*, at 4). Defendants focus on Plaintiff's corporation, Viral Storytelling, Inc., and argue that both its creation (before Plaintiff began working for N&TS) and its continued existence (after Plaintiff ceased working for N&TS) to demonstrate Plaintiff's status as an independent contractor. (*Id.*, at 5-7). Finally, Defendants contend that Plaintiff's allegations do not satisfy the economic realities test. (*Id.*, at 7-10).

Plaintiff responds that she may plead in the alternative and has done so here. (ECF No. 30, at 2). She maintains that Defendants instructed her to incorporate "as the means for her to receive her wages" and to avoid employment laws. (*Id.*, at 3). To the extent Plaintiff pleads her FLSA claim in the alternative as an independent contractor, the FLSA claim will be dismissed. The FLSA protects employees, not independent contractors. *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 305 (4th Cir. 2006). However, Plaintiff plausibly alleges that N&TS required Plaintiff to incorporate to avoid employment laws and that she was an employee.

To determine "whether a worker is an employee covered by the FLSA, a court considers the 'economic realities' of the relationship between the worker and the putative employer." *Schultz*, 466 at 304. "The focal point is whether the worker 'is

economically dependent on the business to which he renders service or is, as a matter of economic reality, in business for himself.'"  *Id.*  Courts consider the following factors when determining "whether a worker is an employee or an independent contractor[:]"

> (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

*Id.* at 304–05.  Plaintiff alleges that N&TS represented her as an employee publicly to clients.  (ECF No. 24, ¶¶ 12–15).  She alleges that N&TS established her travel schedule, required her "to be on call to receive client phone calls at any time[,]" and "set deadlines for transcription work, which required [her] to work on transcription one day, and then make up the marketing hours on other days of the week." (*Id.*, ¶¶ 9, 19).  Plaintiff alleges that N&TS paid her $1,250 per week.  These allegations suggest that N&TS controlled the manner in which Plaintiff performed her work and that Plaintiff did not have opportunity for profit or loss.  Plaintiff's allegation that N&TS required her to incorporate to avoid employment laws also informs the economic realities analysis because the allegation suggests that

11

N&TS attempted to manipulate the economic realities to make Plaintiff appear as an independent contractor.

**B.   Individual Liability**

The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  Courts in this district determine whether an individual is an "employer" under this definition by examining "the economic realities of the relationship between the employee and the putative employer." *Ceseres v. S & R Mgmt. Co., LLC*, No. 12-01358-AW, 2012 WL 5250561, at *3 (D.Md. Oct. 24, 2012).  The economic realities test looks to a number of factors, including whether the putative employer "is someone who (1) has the authority to hire and fire employees; (2) supervises and controls work schedules or employment conditions; (3) determines the rate and method of payment; and (4) maintains employment records."  *Khalil v. Subway at Arundel Mills Office Park, Inc.*, No. 09-00158-CCB, 2011 WL 231793, at *2 (D.Md. Jan. 24, 2011).  No single factor is dispositive; rather, the totality of the circumstances must be considered. *See e.g., Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947) (employer-employee relationship does not depend on "isolated factors but rather upon the circumstances of the whole activity").  Accordingly, an individual defendant's status as a high-level corporate shareholder or officer does not

12

necessarily impart "employer" liability to that individual; the analysis turns on the economic realities of the individual's relationship with the putative employee. *Pearson v. Prof'l 50 States Prot., LLC*, No. 09-03232-RDB, 2010 WL 4225533, at *4 (D.Md. Oct. 26, 2010).

The MWPCL, in turn, permits an employee to recover treble damages when her employer does not pay the employee on a regular basis or promptly upon termination.[6] *Butler v. DirectSat USA, LLC*, 800 F.Supp.2d 662, 669-70 (D.Md. 2011). The MWPCL defines "employer" to include "any person who employs an individual in the State or a successor of the person." Md. Code Ann., Lab. & Empl., § 3-501(b). This definition is more restrictive than either the FLSA or the MWHL because it does not expand employer liability to those acting on behalf of the employer. *Watkins v. Brown*, 173 F.Supp.2d 409, 416 (D.Md. 2011) (rejecting an interpretation of "employer" that would encompass supervisors, officers, or other agents acting on behalf of a corporate employer). Thus, for purposes of the MWPCL, the term "employer" must be interpreted in accordance with the "'commonly understood meaning of the term. . ., which contemplates some sort of contractual relationship involving the payment of wages in

---

[6] Defendants note that the FLSA and MWHL do not provide for treble damages. (ECF No. 27-1, at 17). Plaintiff responds that the reference to treble damages for her FLSA and MWHL claims should have been a reference to liquidated damages. (ECF No. 30, at 8-9).

exchange for services.'" *Caseres*, 2012 WL 5250561, at *4 (quoting *Watkins*, 173 F.Supp.2d at 416).

Plaintiff's allegations in the third amended complaint do not sufficiently expand upon her earlier allegations to allege individual liability against Ms. Federici and Mr. Masenzani.[7] Plaintiff alleges that Mr. Masenzani hired her, and negotiated and approved her marketing contract. Plaintiff alleges that she reported to Mr. Masenzani and that Mr. Masenzani, "either directly or through his assistant. . ., requested the specific tasks that Plaintiff performed." (ECF No. 24, ¶ 3). Plaintiff alleges that she submitted her pay requests to Ms. Federici for approval and payment and that Ms. Federici decided not to pay for the translation work. She elaborates that Ms. Federici maintained her employment records and decided to reduce Plaintiff to a part time schedule. Plaintiff alleges that both Ms. Federici and Mr. Masenzani "had responsibility for payment of wages" and "directed Plaintiff's marketing activities." (*Id.*, ¶¶ 7-8). These conclusory allegations are insufficient. Plaintiff merely recites the elements of the economic realities test. Her allegations continue to lack factual support. Ms. Federici and Mr. Masenzani will be dismissed.

---

[7] Although the parties agree that Mr. Masenzani died, neither party filed a proper statement noting the death under Fed.R.Civ.P. 25(a).

14

**IV. Conclusion**

Because the court is denying the motion to dismiss Plaintiff's FLSA overtime claim, the court need not address the argument regarding supplemental jurisdiction over Plaintiff's state law claims and the motion to dismiss the state law claims is moot. For the foregoing reasons, the motion to dismiss the third amended complaint filed by Defendant N&TS Group Corporation, (ECF No. 27), will be denied in part and granted in part. A separate order will follow.

```
                                    /s/
                          DEBORAH K. CHASANOW
                          United States District Judge
```